Common Pleas Court of Pickaway County.

H. M. CRITES v. STANDARD OIL COMPANY.

Decided April 19, 1932.

*C. A. Leist* and *T. J. Abernethy,* for plaintiff.

*Holliday, Grossman & McAfee* and *Richard Simkins,* for defendant.

ADKINS, J.

This suit between plaintiff, H. M. Crites, and the defendant, the Standard Oil Company of Ohio, arises out of four contracts made and executed by them as follows:

First: That made on the 28th day of July, 1928, by which plaintiff agreed to construct a gasoline station on his lot at the corner of Court and Harrison streets in the city of Circleville, Ohio, wherein the defendant, the Standard Oil Company of Ohio, did equip said service station with all the necessary equipment needed to handle the products of the said Standard Oil Company from said service station. The evidence shows that plaintiff did buy and sell the products of the Standard Oil Company of Ohio and handle them through this station until about the first day of June, 1929.

Second: On the first day of June, 1929, plaintiff leased to the defendant, the Standard Oil Company of Ohio, the service station for a period of five years which said lease was to be fully ended on the 31st day of May, 1934. As a rental for said service station plaintiff was to receive one-half cent per gallon for all gasoline sold from said station. The metes and bounds of the real estate going with this service station as shown by the written lease is as follows:

"Premises situated in the city of Circleville, county of Pickaway and state of Ohio, bounded and described as follows: being located at the northwest corner of the intersection of Court and Harrison streets in the city of Circleville, Ohio, and having a frontage of 100 feet on Court street and running back of equal width a distance of 100 feet along Harrison street."

This lease is in writing signed by the parties thereto and acknowledged by H. M. Crites as the lessor before a notary public. Mr. H. M. Crites acknowledged the instrument and that *"the signing of the foregoing instrument and the same is his free act and deed."* The court is not able to find any irregularity in the execution of this lease, but does find it is an absolute lease to the defendant, the Standard Oil Company of Ohio, for a period of five years to be fully completed on the 31st day of May, 1934.

Third: On the same day the above lease was executed, said service station including the same real estate described in the lease of H. M. Crites to the Standard Oil Company of Ohio was leased back to H. M. Crites for a period ending on the 31st day of May, 1934, H. M. Crites agreeing to pay the Standard Oil Company of Ohio as rent for the said premises the sum of $1.00.

This lease among many other things provides for the following:

"That the said premises and the said building, machinery, equipment and appliances shall be used only for storage, handling and sale of such petroleum products and other goods as may be *sold to lessee by the lessor* and for such purposes as are incidental thereto and for no other purpose or purposes whatever except as otherwise authorized in writing by lessor.

"The lessee will operate its business continuously during the term thereof * * *.

"That lessee will not erect or display on said premises any placards, signs, or advertising devices unless the same shall first have been approved by lessor. * * *

"That lessee will not assign, mortgage, encumber or transfer this lease or sublet the said premises, buildings, equipment, machinery and appliances or any part thereof or become associated with any other persons directly or indirectly as partners or otherwise in regard to lessee's interest in, to and under this lease without the written consent of lessor first had and obtained. * * *

"That if lessee shall fail to keep and perform or shall violate any of the covenants, conditions and stipulations of this lease on the part of the lessee to be kept and performed, * * * then in such event, the lessor at any time thereafter shall have the right, without notice, to enter upon said premises and take possession of the

same, together with all buildings, machinery, equipment and appliances situated thereon, and from the time of such entry this lease shall terminate and become void and of no effect and shall be forfeited."

This lease further provides:

"That no obligation, agreement or understanding on the part of either party to be performed shall be implied from any of the terms and provisions of this lease, all obligations, agreements and understandings being expressly set forth herein."

This lease was signed by both of the parties thereto and properly and legally executed in writing.

Fourth: After this sub-lease was made from the Standard Oil Company of Ohio to the said H. M. Crites, an *authorized agents agreement* was entered into by the parties by which agreement H. M. Crites became the agent of the Standard Oil Company of Ohio to sell its products through this service station. The agreement sets forth that the second party, (Crites) "shall act as the authorized agent for the first party at a service station located at Court & Harrison Streets, Circleville, Ohio, * * *, for the sale of the first party's gasoline, motor fuel, lubricants and petroleum products generally, said employment to continue so long as the second party fulfills his agreements hereunder."

It further provides that "second party shall not handle, deal in, advertise or dispense from or upon said premises any petroleum products except those delivered to him by the first party."

And the agent's agreement further provides:

"As full consideration for the services, expenses and obligations of second party, first party agrees to pay and second party agrees to accept commissions on all goods sold by second party at said station in accordance with the terms of this agreement, commissions on gasoline to be three cents per gallon.

"First party's dealer list price and first party's posted station price for any or all its products are subject to change at any time by first party."

This authorized agents agreement was entered into on the 14th day of January, 1930.

The plaintiff charges *"fraud"* and *"misrepresentation"* in these conveyances and contracts. The burden of proof is on the plaintiff to prove *"fraud"* by not only the preponderance of the evidence, but by proof which is *clear* and *convincing*. There has been a mass of evidence introduced in this case to vary or explain these written instruments which is incompetent from any standpoint except that of "fraud." If the evidence fails to prove "fraud" by the rules of evidence well established, the court should eliminate it from consideration.

There is no such law on this question of "fraud" and the rules of evidence are so well known that it is not necessary for the court to make extensive references to these authorities, but the court wishes to call attention to the case of *Penick* v. *Penick, et al.,* 5th App., page 420, where the court in its comments says:

"Fraud is never inferred but must be alleged and proven by clear and convincing evidence.

"We feel it is the settled policy of not only this but other states, as indicated by repeated decisions of our courts of last resort, that deeds executed in conformity to law shall not be set aside except upon evidence which will clearly satisfy the court that the claim of fraud has been fully and completely established, the mere preponderance of the evidence not being sufficient." See also *Kushmeder* v. *Overton,* 26 Ohio App. 74.

These contracts being in writing and signed by all the parties and acted under and carried forward by both of the parties and which from what the court has gathered from the evidence, were well understood by both parties, and can not be interfered with by the court except by proof of fraud which is *clear* and *convincing*. The court holds that the evidence does not justify a finding of fraud against either party to these contracts.

The plaintiff, H. M. Crites, also claims that the land described in these leases has upon it or through it the roadway by which ingress and egress is had to the large mill on lands adjoining the land described in this lease. The evidence shows by the survey that the roadway to the said mill is partly on the land included in said conveyances or leases. Plaintiff does not ask for a reformation of the lease, for probable mistake, in order that his mill and

right of way to it may be protected, but asks the court to cancel the written obligation and declare it null and void. In appealing to the conscience of a court of equity and asking equity, the party so appealing to the court must be willing to do his part, that is, do equity. The defendant, the Standard Oil Company of Ohio, has filed a waiver of its exclusive right to said roadway, thereby leaving the right to pass over this road free to both parties to the lease. The court is of the opinion that the right is fully protected by this waiver and refuses to cancel or set aside the said lease for that reason.

It is contended by the plaintiff that these leases and contracts are unilateral and not valid contracts. It is not necessary for the court to go into an extensive discussion of these contracts, but there are mutual obligations on both parties to these contracts, and a large amount of business has been done through extensive periods of time under them, and every one of these contracts. Leases and contracts have been upheld by the courts which were very similar to the contracts in this suit. See *Shell Petroleum Corporation* v. *Frank E. Ford,* Supreme Court of Michigan, decided June 25th, 1931, cited in this case by the defendant in its brief.

The plaintiff contends that he sold under these contracts 230,778 gallons of gasoline and that the Standard Oil Company of Ohio is still indebted to him two cents per gallon on said sales, a total of $4,615.56. He contends that he was to have the gasoline at two cents per gallon less than the tank wagon price in the field. As the court understands that part of the contract the price by which the gasoline was to be furnished to plaintiff by the defendant was to be two cents per gallon less than the price posted at the Standard Oil Company's office in the city of Cleveland. The Standard Oil Company of Ohio has been in business in the vicinity of this service station for many years, with service stations and tank wagons operating in every direction, all of which the plaintiff knew and should not have been misled as to the methods of the business. The evidence shows that the tank wagon prices in the field are not stable as it becomes necessary according to the testimony of some of the witnesses to make cuts to meet competition.

It is the weight of the testimony that the agents handling the Standard gasoline, as to price to be paid, are governed by the price posted at the offices of the company at Cleveland. The court refuses to allow the two cents per gallon extra as prayed for in plaintiff's petition, and his demand for $4,615.56 judgment is refused, the Standard Oil Company of Ohio having settled with plaintiff in full.

The plaintiff also asks and prays for $20,000 damages to his business by reason of a civil action in E. C. Friece's court in forcible detention against this plaintiff, H. M. Crites, and for other reasons set forth in the arguments of plaintiff's attorneys in this case. These claims for damages are altogether speculative and the court is unable to conclude whether there is any damage accruing to plaintiff, and therefore refuses to allow any damage prayed for by plaintiff.

The defendant, the Standard Oil Company of Ohio, has a motion pending to dissolve the temporary restraining order granted against E. C. Friece, justice of the peace of Circleville township, Pickaway county, in forcible detention, involving the right of possession of this service station and property. On the basis of the provisions set forth in the written contracts between the parties the court does sustain the said motion and said injunction is dissolved.

It appears from the evidence in this case, as well as by admissions of the plaintiff, that plaintiff is no longer selling through this service station products of the Standard Oil Company of Ohio, clearly in violation of the lease made by the company to the said H. M. Crites, and also in violation of the authorized agents agreement between the parties, and said company by the provisions of said contracts is entitled to possession of said service station.

The court hereby orders that the Standard Oil Company of Ohio be put in possession of said service station and the land described in said lease, subject, however, to the right of the plaintiff or his successors to the use of the roadway to the mill property adjoining the property of this service station, as provided for by the waiver of exclusive right to said roadway by the defendant, the

Standard Oil Company, heretofore filed in this court.

It further appears by the evidence that the plaintiff, H. M. Crites, has refused to further sell the products of the Standard Oil Company of Ohio, through this service station under the lease to him and his authorized agents agreement, but has for a long period of time and is at this time selling oil products other than those furnished by the Standard Oil Company of Ohio in violation of his written agreements with said oil company as shown by the sublease and the authorized agents agreement.

The court enjoins plaintiff from further violations of said written contracts and from selling from said service station products other than those furnished by the Standard Oil Company of Ohio.